91 So.2d 657 (1956)
FLORIDA CITRUS COMMISSION, a body corporate, and Nathan Mayo, as Commissioner of Agriculture of the State of Florida, Appellants,
v.
GOLDEN GIFT, Inc., a Florida corporation, Appellee.
Supreme Court of Florida. En Banc.
October 11, 1956.
Rehearing Denied December 11, 1956.
*658 W.J. Steed, Orlando, for Florida Citrus Commission.
William C. Pierce, Tampa, for Nathan Mayo, as Commissioner of Agriculture of Florida.
Wm. A. McRae, Jr., Stephen H. Grimes, Chesterfield H. Smith and Holland, Bevis, McRae & Smith, Bartow, for appellee.
ROBERTS and THORNAL, Justices.
This litigation is concerned with a regulation adopted in February, 1955 by the Florida Citrus Commission, appellant here and defendant below, by which the commission established product standards and labeling requirements for "chilled orange juice". As presently developed, this product is prepared for market in the following manner: Fresh single-strength orange juice is subjected to an irradiation process by means of an ultra-violet ray in order to inactivate certain enzymes in the juice that cause a rapid deterioration in flavor; it is then cooled to just above the freezing point and placed in sealed waxed cardboard cartons (quart or half-pint) similar to those in use in the milk industry. It is shipped and stored under refrigeration and is distributed to the consumer principally by dairies. If properly refrigerated it will retain its flavor for a period of up to three weeks from the time it is prepared for market. This product has only recently (since 1954) been marketed to any considerable extent, and it was not referred to in the 1949 Florida Citrus Code, Chapter 601, Fla. Stat. 1955, F.S.A. The regulation adopted by the Commission provides, in part, as follows:
"The juice may be treated to reduce bacteriological or enzymatic action or to remove objectionable peel oil, but shall not contain any additives of any kind. The juice may be admixed with reconstituted frozen concentrated orange juice or reconstituted frozen concentrated orange juice for manufacturing; or the juice may be prepared *659 solely from reconstituted frozen concentrated orange juice." (Emphasis added.)
Golden Gift, Inc., plaintiff below and appellee here, is a producer and marketer in interstate commerce of chilled fruit juice. By the instant suit, it attacked the regulation in question as beyond the authority of the Commission to adopt and alleged that, even if authorized, the regulation in question was unreasonable, arbitrary and discriminatory, and thus invalid. Its principal complaint was directed to the fact that, by prohibiting all "additives", the regulation denied it the right to add sugar to its product, when all other citrus products (except frozen concentrated orange juice) were allowed to be sweetened under applicable provisions of the statute and the Commission's regulations. The Commission concedes that the addition of sugar to orange juice is not, per se, harmful and that sugar is a "wholesome, nutritive and innocuous" substance. It contended below, however, and here contends, that this prohibition is "necessary to protect the public against fraud and deception and is in the best interests of the entire Florida citrus industry."
The cause was heard by the Chancellor and a decree entered in favor of plaintiff. The Commission has appealed.
In his decree, the Chancellor found that chilled orange juice as produced by plaintiff "meets the requirements of the statutory definition of canned orange juice prescribed in the Florida Citrus Code" and that "plaintiff is not producing a new product which is not covered by the Florida Citrus Code, but that plaintiff, along with other pioneer producers of single-strength fresh orange juice, packaged and marketed in waxed cardboard cartons, has only devised a new and successful technique for accomplishing a result tried many times before by Florida citrus growers." It is contended here by the Commission that this finding is erroneous; that chilled orange juice is a distinctly new product with none of the qualities of a "canned product" as defined by statute, Section 601.03(4), Fla. Stat. 1955, F.S.A.; and that the Commission was not required to proceed under the specific legislative authority granted it to regulate "citrus fruits and canned and concentrated products thereof," but that it could regulate chilled fruit juice under the general power contained in Section 601.10(7), Fla. Stat. 1955, F.S.A., to "regulate and control methods and practices followed or used in the harvesting, grading, packing, canning, concentrating, or otherwise processing citrus fruits for human consumption, * * * to the end that such methods and practices as affect the eating and keeping qualities and depreciate the value thereof may be minimized to the greatest extent possible, if not altogether eliminated." (Emphasis added.) The Commission's contention in this respect is sustained, under the authority of Taylor v. Roberts, 84 Fla. 654, 94 So. 874, and State v. City of Jacksonville, Fla. 1951, 50 So.2d 532.
We next consider the question of whether the regulation under attack is a reasonable exercise of the Commission's general regulatory powers.
The plaintiff's position is this: It has a market on a year-round basis for "chilled orange juice" and is required to process its product continuously throughout the entire year in order to supply, and keep, its market; yet, during certain seasons of the year, a substantial portion of the oranges that are available (and which pass the maturity tests) will not meet the minimum solids requirement (10.5 Brix) prescribed by the regulation in question for "chilled orange juice." Moreover, plaintiff's customers demand a somewhat sweeter product than the minimum authorized by the regulation. Plaintiff can meet the requirements of the regulation and the demands of its customers during these "off" seasons only by adding sugar or frozen concentrated orange juice to whole single-strength orange juice. The regulation in question permits the addition *660 of frozen concentrated orange juice to plaintiff's product but prohibits the addition of sugar unless the container is labeled "Substandard". Plaintiff is not in the business of processing and selling frozen concentrated orange juice. The addition of frozen concentrated orange juice to bring up the solids content of its product would be more costly to plaintiff than the addition of sugar, but there was evidence that, even so, the plaintiff could still operate at a profit.
The Commission contends, on the other hand, that "chilled orange juice" is more nearly comparable to frozen concentrated orange juice than it is to canned orange juice, so that it is not, per se, unreasonable to permit sugar to be added to canned orange juice and prohibit its addition to the other two products unless they are labeled "Substandard." We are inclined to agree that there was an adequate basis for the classification as between "chilled" and "canned" juice. The latter is necessarily pasteurized to preserve it. Although "chilled" orange juice goes through a process of irradiation, it is not pasteurized nor sealed hermetically in containers to such an extent that it can be stored at room temperatures for indefinite periods of time, as is the case with canned orange juice. As noted, "chilled orange juice" must be stored under refrigeration and, even then, will maintain its flavor only for a comparatively short period of time. Another point of difference is that canned juice is not marketed as fresh juice, whereas "chilled orange juice" is considered by the purchaser to be "fresh juice".
The record supports the Commission's contention that the regulation in question is necessary to protect the public against fraud and deception and is in the best interests of the entire Florida citrus industry. Thus, it was shown that when sugar is added to fresh orange juice to increase the solids content, then lime juice is added to correct the acid content, and the next step is to add water to maintain the ratio, thereby increasing the volume of the final product, which is no longer the chilled single-strength orange juice which the customer believes he is buying. It is difficult, if not impossible, for an inspector to detect the adulteration of "chilled orange juice" if sugar is allowed to be added. It was also shown that the marketing in the Fall of the year of "chilled orange juice," having the appearance of freshly squeezed orange juice but which has in fact, been sweetened, in competition with oranges which are tart, will have an adverse effect on the economy of the Florida citrus industry.
The power of the State to make regulations for the protection of its citrus industry under its police power has been sustained by this court many times. See Sligh v. Kirkwood, 65 Fla. 123, 61 So. 185, affirmed 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835; Johnson v. State, ex rel. Maxcy, 99 Fla. 1311, 128 So. 853; Mayo v. Polk County, 124 Fla. 534, 169 So. 41. The exercise of the police power in this particular field, as in all other fields, cannot properly be exercised beyond such reasonable interferences with the liberty of action of individuals as are really necessary to preserve and protect the public health and welfare. Eelbeck Milling Co. v. Mayo, Fla. 1956, 86 So.2d 438. Nevertheless, every reasonable presumption must be indulged in favor of the validity of the legislative or regulatory actions brought in question, Varholy v. Sweat, 1943, 153 Fla. 571, 15 So.2d 267; L. Maxcy, Inc., v. Mayo, 103 Fla. 552, 139 So. 121. And "a regulation enacted by an administrative board, within the apparent scope of its powers, will be deemed prima facie reasonable and justified by the facts unless the facts as shown require a conclusion to the contrary." State ex rel. Hollywood Jockey Club, Inc., v. Stein, 1938, 133 Fla. 530, 182 So. 863, 871.
We have concluded that the regulation in question was within the authority of the Commission to adopt, under its general *661 regulatory powers granted by statute, that it is reasonably related to the ends sought to be attained, that is, the protection of the citrus industry of this state and the prevention of fraud and deception in the "chilled orange juice" industry; and that plaintiff has failed to carry its burden of showing that it is so clearly arbitrary and discriminatory as to invade plaintiff's organic rights.
For the reasons stated, the decree appealed from should be and it is hereby reversed.
DREW, C.J., and TERRELL, THOMAS, HOBSON and O'CONNELL, JJ., concur.