CARROLL, DONALD K., Judge.
The Commissioner of Agriculture of the State of Florida has appealed from an adverse declaratory decree entered by the Circuit Court for Leon County determining the status of the appellee as a celery producer under a marketing statute and rules promulgated pursuant thereto.
The main purposes of Chapter 573, Florida Statutes, F.S.A., known as “the Florida celery and sweet corn marketing law,” are to enable celery and sweet corn producers of this state, with the aid of the state, to correlate more effectively the marketing of their agricultural commodities, with market demands therefor; and to eliminate or reduce economic waste in the marketing of celery and sweet corn grown in Florida. Section 573.03. The term “producer” is defined in Section 573.04 as meaning “any person engaged within this state in a proprietary capacity in the business of producing, or causing to be producer, any celery or sweet corn for market.”
Among the duties and powers of the Commissioner of Agriculture, as provided in Section 573.22, are the duty to administer and enforce the provisions of this law, and the power, upon the recommendation of the advisory committee concerned, to establish certain administrative rules and regulations as may be necessary to facilitate the administration and enforcement of marketing orders and agreements, as well as the power, consistent with the provisions of Chapter 573, to issue and make effective seasonal marketing regulations.
Section 573.14 provides for advisory committees to assist the Commissioner in the administration of any marketing order.
In apparent conformity with his statutory authority the Commissioner on July 17, 1961, promulgated Marketing Order No. 2 for Florida celery, defining a “producer” as “any person engaged, during the 1960-61 season, within the production area in a proprietary capacity in the business of producing, or causing celery to be produced for market.” The marketing order further provides: “The base quantity for each producer shall be the average of the number of crates of celery he shipped in the two seasons of his highest production during the three seasons 1958-59, 1959-60 and 1960-61.”
The appellee-plaintiff, A. J. Sullivan, had been a producer of celery for many years, producing and marketing a substantial crop in each season from 1950-51 to and through 1959-60. Because of financial difficulties, however, he was unable to produce a crop of celery during either of the seasons 1960-61 or 1961-62. Subsequently he rehabilitated himself financially so that he was enabled to produce on leased land a substantial crop of celery for the 1962-63 season. He also has some $35,000 to $40,000 worth of farming equipment, much of which is peculiarly suited to the growing of celery. In the seasons of 1950-51 to 1959-60 Sullivan grew and shipped between 161,821 and 334,679 crates of celery in each season. In the last seasons of his production, he grew and shipped celery as follows: 1957-58— 321,260 crates, 1958-59 — 291,434, and 1959-60 — 168,372.
On May 12, 1962, Sullivan applied to the Florida Celery Advisory Committee, created by the said marketing order, for the establishment of a base quota of 250,000 crates, but the committee classified Sullivan as a “new producer” instead of a “producer” and established for him a base quota of 45,439. A rehearing was denied and the Commissioner, to whom Sullivan appealed, affirmed the said limited quota.
Sullivan then filed a complaint in the said Circuit Court seeking, among other things, a declaration concerning his rights under Chapter 573 and the said marketing order. Upon final hearing the court held that the classification of Sullivan as a “new producer” was unreasonable and that he was entitled to be classified as a “producer” and accorded a permanent base quantity of the average of his production during the 1958— 59 and 1959-60 seasons.
*122 Part of the court’s “ratio decidendi” in reaching this conclusion was thus expressed n its findings of fact and law:
“If a three year period is to be the representative period of time for determining the amount of allotment to each producer, there is no good reason why the same period of time should not he used in determining those who are producers and, therefore, entitled to allotments. The record shows that two parties granted allotments had not produced during the full three year period —produced only in 1960-61 and one produced only in 1959-60 and 1960-61. The record shows that the original base quantity allotted to at least ten producers was higher than their production during the 1960-61 season.
“It is the opinion of the Court that the statute contemplates that the Commissioner shall fix a reasonable period of time as the ‘representative period’ to be used in making allotments to producers ; that the Commissioner has exercised his discretion in fixing the period of time specified in the marketing order for this purpose; that the Commissioner does not have authority under the statute to establish one period of time as the ‘representative period’ for fixing the amount of allotments and then use an entirely different period of time as that to be considered in determining who is entitled to receive allotments.”
The unreasonableness of the said marketing order’s definition of “producer” as a person engaged during the 1960-61 season in the business of producing celery for market, is clearly apparent from comparing the status of Sullivan with that of persons who meet the requirements for classification as producers. While this is an extreme example, a person who produced for market but one crate of celery during the 1960-61 season would qualify as a producer, while Sullivan, who had produced and marketed celery in Florida since 1939, and through the 1959-60 season, producing large numbers of crates during the later years, would be and was classified as a “new producer” simply because he did not happen to produce celery in the 1960-61 season.
Despite many inroads during recent years on the people’s economic freedoms throughout the country on both state and federal levels, the principle still stands that the exercise of the police power cannot extend beyond reasonable interferences with the liberty of action of individuals as are-really necessary to preserve and protect the public health and welfare. See Florida Citrus Commission v. Golden Gift, Inc., 91 So.2d 657 (Fla.1956), Eelbeck Milling Co. v. Mayo, 86 So.2d 438 (Fla.1956), Larson v. Lesser, 106 So.2d 188 (Fla.1958), and State v. Leone, 118 So.2d 781 (Fla.1960).
We concur with the Circuit Court’s conclusion that the subject marketing order is unreasonable in its application to Sullivan, but we think that the court exceeded its authority in holding that Sullivan is a producer. While that may well be a logical conclusion, still the legislature vested' in the Commissioner the power to make rules and regulations to carry out the purposes of the celery and sweet corn marketing law. The courts should not exercise that power even when the person entrusted with that power by the legislature has made an unreasonable regulation. We think that the more appropriate procedure is to refer the matter back to the Commissioner so that he may revise the marketing order in such a way as to make it reasonable in its application to Sullivan.
We reverse that part of the final decree appealed from declaring Sullivan to be a producer, and otherwise affirm the decree. The cause is remanded for further proceedings consistent with the views herein set forth.
Affirmed in part and reversed in part, and. remanded with directions.
*123 'STURGIS, C. J., concurs.
RAWLS, J., concurs in part and dissents in part.