QUESTIONS: 1. Does the University of Florida have any responsibility for the billing, collection, records systems, and internal cash and accounting controls relating to professional practice fees? 2. Are persons engaged in the billing, collection, and administration of the records system related to professional practice fees generated from the practice of dentistry and medicine at the University of Florida performing a private or a public function? 3. May the University of Florida lawfully accept grants of money from university physicians and dentists to pay salaries and expenses for the billing, collection, and administration of the records system related to professional practice fees? 4. If the answer to question 3 is yes, are persons compensated from the grants subject to the same laws, rules, and regulations as state employees?
SUMMARY: The University of Florida by law and implementing rules is delegated broad authorization to bill, collect, and keep records of and account for the professional practice fees resulting from clinical practice by members of the academic staff of the J. Hillis Miller Health Center of the university and, having exercised such delegated authority, it is therefore statutorily responsible for the performance of these activities and functions. The University of Florida is empowered to accept grants of money, materials, or property of any kind and direct the use of such funds to pay and finance university employees and other university operations relating to the collection and administration of professional practice fees resulting from the clinical practice by the academic staff or the dental and medical colleges. However, the professional fees and private practice plans authorized to be set, regulated, and maintained under Rule 6C-9.17, F.A.C., and Board of Regents policy for the handling of professional fees are established, administered, and regulated by the university and its administrative officers, and all collections, disbursements, grants, and donations from the fund established by such rule and policy are made by such university administrative officers. Since the predominant purpose of such private practice settings is a public or educational one, those persons engaged in the billing, collection, administration, and accounting relating to such professional practice fees are performing a public function. Employees of the university engaged in the billing, collection, records systems, and internal cash and accounting controls relating to professional practice fees are subject to the same law, rules, and regulations as other state employees. Your questions are interrelated and will be answered together. Sections 240.001 and 240.042, F. S., establish the general powers of the Board of Regents. Section 240.001(1), F. S., grants the Board of Regents the necessary power to govern, regulate, coordinate and oversee the agencies in the State University System in order to effectively accomplish the lawful aims of education, including but not limited to those enumerated in s. 240.001. The stated legislative intent is that the Board of Regents shall be primarily a policymaking board with the power to establish rules and regulations to carry out such lawful aims of education. Section 240.001(2)(a). The Board of Regents is fully responsible for the management of the institutions and agencies of the State University System. See AGO 071-199. The board is empowered to delegate to its staff and to heads of the several institutions and agencies under its jurisdiction such of its powers as it deems expedient and proper, and is authorized to establish policies, rules, and regulations under which the State University System is to be managed and operated. Section 240.042(1) and (2); cf. s. 240.031(1) and (3), F. S. See also AGO 075-306 and ss. 240.042(2)(b) and (e), 240.082, 240.095, and 241.471(1) and (2), F. S. The organization, powers, duties, and functions of the Board of Regents are delineated in Chapter 6C, F.A.C. Rule 6C-9.17, F.A.C., deals specifically with the handling of professional fees. By the statutes and implementing rules, the University of Florida Health Care Center is authorized to carry on the activities and functions which are the subject of your inquiry, and pursuant to s. 6C-9.17(1), F.A.C., is "authorized to set and regulate professional fees, and develop and maintain private practice plans for the orderly collection and distribution of such fees" as further authorized and provided for in the Policy for Handling of Professional Fees, Revised May 16, 1975. When enabling legislation provides that an administrative agency may make rules and regulations (ss. 240.001(2) and 240.042(2), F. S.) as may be necessary to carry out the provisions of the enabling act (or the lawful aims of education, s. 240.001(1), F. S.), the validity of regulations promulgated thereunder will be sustained by the courts so long as they are reasonably related to the purposes of such enabling legislation. Mourning v. Family Publications Service, Inc., 411 U.S. 356 (1973); Florida Beverage Corporation, Inc. v. Wynne, 306 So.2d 200 (1 D.C.A. Fla., 1975). It is well settled that such statutory provisions and implementing rules and policies are presumably valid and are to be given full force and effect until they are passed upon by the courts and declared or determined otherwise. White v. Crandon, 156 So. 303
(Fla. 1934); Pickerill v. Schott, 55 So.2d 716 (Fla. 1951); State v. Mayo, 91 So.2d 657 (Fla. 1956). Thus, the university is delegated broad authorization to bill, collect, and keep records of and account for the professional practice fees; and having exercised such delegated authority, it is therefore statutorily responsible for the foregoing activities and functions. (Also see Policy for Handling of Professional Fees, 2 and 4, supra.) Section 6C-9.17(1), F.A.C., declares such private practice settings to be educationally oriented and an integral part of the academic activities, designed to generate clinical practice experience essential in training and educating medical students. Such quasi-legislative findings prima facie make such private practice settings a public (educational) function and purpose and such legislative findings and rules are deemed to govern until and unless the facts as shown require a conclusion to the contrary. Florida Citrus Commission v. Golden Gift, Inc., 91 So.2d 657 (Fla. 1956); also see State v. Cotney, 104 So.2d 346 (Fla. 1958); Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304
(Fla. 1971). The State Board of Regents is empowered to receive donations (s. 240.042(1), F. S.) and, subject to the limitations and restrictions in Ch. 243, F. S., has the power and authority to accept grants of money, materials, or property of any kind from a federal agency, private agency, corporation, or individual upon such terms as the grantor may impose. Section 243.02(6) and (8). The State Board of Education, as the head of the Department of Education, of which the Division of Universities is a part (s.20.15(1), (3)(d), and (4), F. S.), may accept gifts, grants, and endowments on behalf of the department consistent with the powers and functions of the department (s. 20.05(6), F. S.) and may delegate its authority and functions to the Board of Regents unless the State Board of Education is explicitly required by statute to perform the same without delegation. Sections20.05(1)(b) and 229.053(1), F. S. It should be noted, however, that under Rule 6C-9.17 and the Board of Regents policy for handling professional fees, the university physiciansacademic staff and dentists-academic staff do not make any grants of money to the university to pay the salaries and expenses in question and do not administer the private practice plans or the several funds established pursuant to the rule and the Board of Regents policy. The University Health Care Center and Medical Center at the respective designated universities are authorized by Rule 6C-9.17 to set and regulate these professional fees and to maintain the private practice plans for the orderly collection and distribution of such fees, subject to approval by the president of the university and the chancellor, pursuant to the general guidelines established by the Board of Regents. The physician and dentist members of the academic staff are required to deposit all such fees into the fund established by the university and administered by the university administrative officials, and all disbursements, grants, and donations from the funds established by the rule and the board policy are made by the administrative officers of the university. In sum, the entire system is established, regulated, and administered by the university and its designated administrative officers. Section 240.095, F. S., requires all funds received by any institution or agency in the State University System, from whatever source received and for whatever purpose, to be deposited in the State Treasury subject to disbursement in such manner and for such purposes as the Legislature may by law provide, but funds received from private sources as gifts, grants, or donations, and such other funds as may be approved by the Board of Regents and the Department of Administration, are specifically exempted from the provisions of that section and, with the approval of the Board of Regents, may be deposited outside the State Treasury. Section 240.095(7) and (8); cf. AGO 073-82; s. 215.32(2)(b), F. S. Pursuant to s. 240.82, F. S., all moneys received by institutions under the management of the Board of Regents, other than from state and federal sources, are appropriated to the use of the Board of Regents for the respective institutions collecting the same to be expended as the Board of Regents may direct in pursuance of itemized budgets approved by the Department of Administration. Also see ss. 240.001(3) and 240.042(2)(e), F. S., relative to the review and approval of budgets in the State University System and requests for appropriations by the Board of Regents. With respect to the receipt and use of contributions from private sources by state officials in furtherance of public purposes under s. 215.32, F. S., see Advisory Opinion to the Governor, 200 So.2d 534 (Fla. 1967); id., 201 So.2d 226 (Fla. 1967). None of the funds here in question are from a state or federal source. The professional practice fees are nonstate funds which the Legislature, pursuant to s. 240.082, F. S., has appropriated to the use of the Board of Regents and which are to be expended as that board may direct, and they are expressly exempted from the requirement that university system funds must be deposited in the State Treasury and disbursed in such manner and for such purposes as the Legislature may by law provide. Sections 240.082 and 240.095(7) and (8), F. S. See AGO's 072-193 and 073-82. Even though these funds are not subject to the control of the State of Florida (see Policy 7, Revised May 16, 1975, supra, and s. 240.095[7] and[8]), they are still subject to audit by the State Auditor. Policy 8, Revised May 16, 1975, supra. It might be noted that Rule 6C-9.17(3), F.A.C., provides that the private practice plans therein provided for are to be audited by "an independent certified public accountant/state auditors" and copies of such audit reports are to be filed with the Board of Regents. Cf. s. 240.182(3), F. S. Since the predominant purpose of the activity referred to in your questions appears to be a public or educational one, under the statutes and implementing rules and the authorities discussed above, and until judicially determined otherwise, those persons engaged in the billing, collection, administration, and accounting relating to such professional practice fees are performing a public function. The persons engaged in the billing, collection, records systems, and internal cash and accounting controls are all hired and fired by the University of Florida pursuant to the vested authority in the Board of Regents "to provide for the appointment, employment and removal of personnel of the several institutions and agencies." Section 240.042(2)(b), F. S. Also see ss. 240.042(2)(e) and 240.082, F. S. These employees are paid by state warrant. Retirement and social security are withheld. Furthermore, these positions are "authorized" within the meaning of s. 216.011(1), F. S., which states that an "authorized position means a position included in an approved budget." Therefore, these employees are subject to the state laws and rules and regulations governing state employees.