Ernest Ellison Auditor General Tallahassee
QUESTIONS:
1. Are moneys received and disbursed by a county sheriff in connection with his administration of an inmate work-release program under s. 951.24, F. S. `Public money' as that term is used in Ch. 219, F. S.; are moneys received by the sheriff pursuant to s. 951.24(4) subject to the provisions of s. 30.51, F. S.; are any of the funds under s. 951.24(4), which are received by the sheriff as payment for things such as board, subject to the provisions of s. 145.121, F. S.?
2. Are inmates' personal funds, which are confiscated by the sheriff pursuant to Rule 33-8.04(6)(o), F.A.C., `public funds' as that term is used in Ch. 219, F. S.?
3. In light of Rule 33-8.10, F.A.C., adopted by the Department of Corrections: Are funds generated by the operation of an inmate commissary or canteen facility in the county jail `public funds' as that term is used in Ch. 219, F. S.; are they subject to the provisions of s. 30.51, F. S.; or are they subject to the provisions of s. 145.121, F. S.; is any tangible personal property acquired and utilized by the county sheriff in conjunction with his operation of an inmate commissary or canteen facility subject to the provisions of Ch. 274, F. S.?
SUMMARY:
Funds received by a sheriff in connection with his administration of a work-release program for an inmate are not `public funds' and must be handled in accordance with the work-release law and court orders rendered thereunder. Personal funds of inmates are not `public funds' and must be kept in a trust account until further order of the court. Funds generated by operation of an inmate commissary or canteen facility by the sheriff's office in the county jail are not `public funds' and should be disbursed according to a rule prescribing such use as prisoner welfare or recreation. Tangible personal property acquired by the sheriff in connection with his operation of an inmate canteen is subject to the provisions of Ch. 274, F. S., which set forth inventory and record-keeping requirements.
AS TO QUESTION 1:
Section 951.24(1), F. S., provides for the establishment of a work-release program in a county upon the motion of the board of county commissioners and the concurrence of the sheriff. Section951.24(2) states that, when punishment by imprisonment in the county jail is prescribed, the sentencing judge may, at any time during the sentence, permit the prisoner to leave the confines of the jail or county facility, subject to the rules and regulations of the court, to work at paid employment, conduct his own business or profession, or participate in a housing program, while continuing as an inmate of the county facility.
Section 951.24(4), F. S., provides:
 The wages or salary of prisoners employed under this program may be disbursed by the sheriff pursuant to court order for the following purposes in the order listed:
(a) Board of the prisoner.
 (b) Necessary travel expense to and from work and other necessary incidental expenses of the prisoner.
(c) Support of the prisoner's legal dependents.
 (d) Payment, either in full or ratable, of the prisoner's obligations acknowledged by him in writing or which have been reduced to judgment.
 (e) The balance to the prisoner upon discharge from his sentence, or until an order of the court is entered declaring that the prisoner has left lawful confinement, declaring that the balance remaining is forfeited, and directing the sheriff to deposit the funds in the general fund of the county to be spent for general purposes.
Section 951.24(5), F. S., states in relevant part:
 The sheriff may collect from a prisoner the wages or salary earned pursuant to this program. He shall deposit the same in a trust checking account and shall keep a ledger showing the status of the account of each prisoner. Such wages and salaries shall not be subject to garnishment in the hands of either the employer or the sheriff during the prisoner's sentence and shall be disbursed only as provided in this section.
See also s. 951.24(6), F. S., which provides in relevant part: `Every prisoner gainfully employed in liable for the cost of his board in the jail as fixed by the county. The sheriff shall charge his account, if he has one, for such board . . . .'
You question whether the funds collected by the sheriff pursuant to the above-quoted statutory provisions constitute `public money' within the purview of Ch. 219, F. S. Section 219.01(2) defines the term `public money' to mean and include:
 . . . all money collected by a county officer which he is required or authorized by law, as such county officer, to collect, and underpayments, overpayments, partial payments and deposits of such money, except his salary when his sole compensation is provided by such salary. (Emphasis supplied.)
It seems clear that the wages which are earned by a prisoner participating in a work-release program are not `public funds' within the purview of the above-quoted definition. These wages are not paid to or collected for the government or the public. Title to or ownership of these moneys never vests in the county officer or the county. Rather, these wages the personal funds of the affected prisoners, albeit subject to the order of the court, and remain so unless forfeited by the court pursuant to s.951.24(4)(e), F. S. Until so forfeited they never become public moneys. Although s. 951.24 authorizes the sheriff to `collect' such wages, his actual function is to act as an administrator of the program; he must place the funds belonging to the prisoners in trust pending their disbursement pursuant to court order. Moreover, even if such wages were found to be within the literal terms of s. 219.01(2), F. S., the more specific provisions of s.951.24, and the court orders referred to therein, should control over the general provisions of Ch. 219. See, e.g., Haverty Furniture Co. v. McKesson Robbins, 19 So.2d 59 (Fla. 1944); Marston v. Gainesville Sun Publishing Co., Inc., 341 So.2d 783 (1 D.C.A. Fla., 1976), cert. denied, 352 So.2d 171 (Fla. 1977); and Tallahassee Democrat, Inc. v. Florida Board of Regents,314 So.2d 164 (1 D.C.A. Fla., 1975), holding generally that, when general and specific statutory enactments are incongruous, the specific statute controls. Thus, it is evident that the terms of s. 951.24, and not Ch. 219, govern the handling and disposition of prisoners' wages and salaries generated through the work-release program.
The preceding analysis also explains why the moneys collected or received and administered by the sheriff in connection with the administration of a work-release program are not subject to the provisions of s. 30.51, F. S. An examination of this statute reveals that its purpose is to prescribe the disposition of fees, commissions, remuneration, or other funds which the sheriff is authorized by law to receive from other parties and governmental agencies doing business with the sheriff's office, in return forservices rendered or performed by his office. Clearly, however, the prisoners' wages and salaries collected and administered by the sheriff pursuant to court order under s. 951.24, F. S., bear no relationship to services rendered or performed by the sheriff's office for other authorities and paties doing business with his office. The sheriff is merely an administrator of the work-release program and, in effect, acts as a `trustee' of the funds to the extent provided in the court order. Unless the court enters an order forfeiting any balance remaining of the prisoner's funds, these net accumulated moneys are disbursed to the prisoner upon discharge from his sentence. Thus, s. 30.51 is totally inapplicable to the funds under discussion.
Similarly, the terms of s. 145.121, F. S., do not control the funds generated through the work-release program. Section 145.121
is generally applicable to `all fees, costs, salaries, commissions, extra compensation, or any other funds which are paidor payable to a county official or to his office either by law or on account of any service . . . performed by the official for [other governmental agencies and parties].' (Emphasis supplied.) However, the wages earned by a prisoner pursuant to his participation in the work-release program are not `payable' to the sheriff or to his office; such funds are merely held in trust by the sheriff. That portion of a prisoner's wages which is, pursuant to court order, allocated or charged to the prisoner's account for his board as fixed by the county should be so recorded in the ledger showing the status of the prisoner's account. See s.951.24(5) and (6), supra.
AS TO QUESTION 2:
Section 951.23(2)(a), F. S., authorizes and directs the Department of Offender Rehabilitation (now called the Department of Corrections, see Ch. 78-53, Laws of Florida) to adopt rules and regulations prescribing standards and requirements with reference to:
 (a) The construction, equipping, maintenance and operation of county and municipal detention facilities. (Emphasis supplied.)
Pursuant to this grant of statutory authority, the department has adopted Rule 33-8.04(6)(o), F.A.C., which states that the record compiled on the admitted prisoner shall include:
 A written inventory of all monies valuables [sic] or other personal property. All items allowed to be kept by the prisoner and those taken and stored will be recorded. The prisoner and the receiving officer will verify and sign the inventory. If the prisoner refuses to sign, a notation will be placed on the property inventory and a second employee will witness and sign the inventory. After the initial receipt is completed, any changes authorized in the personal property inventory must also be documented, verified and signed by the prisoner and the employee making the transaction.
See also Rule 33-8.10, F.A.C., providing in relevant part:
 It is preferable that prisoners routinely carry no money; if money is permitted, a limit should be set, and all money in possession in excess of that limit should be confiscated.
It seems evident that the money which belongs to a prisoner does not cease to be the personal property of the prisoner merely as a result of his incarceration in the county jail. In other words, the title to or ownership of such funds or property never passes to any public officer or office upon `confiscation' by the sheriff. This conclusion is supported by recent federal court decisions which hold that a civil rights action lies for the wrongful confiscation or loss by prison officials of an inmate's property. See, e.g., Alaxian v. New York State Urban Development Corporation, 554 F.2d 15 (2nd Cir. 1977); Carter v. Estelle,519 F.2d 1137 (5th Cir. 1975), cert. denied, 425 U.S. 97 (1976); and Culp v. Martin, 471 F.2d 815 (5th Cir. 1973).
Accordingly, I am of the view that the mere custodianship andstorage of an inmate's personal funds or property, presumably in the interests of security or the more efficient operation of the jail, do not transform such funds into public funds. Therefore, I must conclude that the term of Ch. 219, F. S., are inapplicable.
AS TO QUESTION 3:
Initially, it should be noted that there is not statute which expressly authorizes or requires the sheriff to operate an inmate commissary or canteen facility for the benefit of the inmates in the county jail. See Lang v. Walker, 35 So. 78 (Fla. 1903), holding that the powers and duties of sheriffs are dependent upon legislative action; accord: Attorney General Opinions 078-151 and 075-161. However, it would appear that such authority may be necessarily implied from the sheriff's common-law authority and duty to operate and manage the county jail. See Brown v. St. Lucie County, 153 So. 906, 908 (Fla. 1933); Baugher v. Alachua County,305 So.2d 838, 839 (1 D.C.A. Fla., 1975); and AGO's 077-55 and 074-266. In addition, s. 951.23(2(b), F. S., authorizes the department to adopt rules and regulations prescribing standards and requirements with reference to, inter alia, `the furnishing to [county and municipal prisoners] of . . . health and comfort items.' In any event, acting under its authority granted by s.951.23, the Department of Offender Rehabilitation (now the Department of Corrections) has adopted Rule 33-8.10, F.A.C., which provides in pertinent part:
 (1) A detention facility commissary may be operated if it is properly controlled. The commissary should not sell food that competes with the detention facility food program. It is preferable that prisoners routinely carry no money; if money is permitted, a limit should be set, and all money in possession in excess of that limit should be confiscated. The Officer-in-Charge must approve all items to be sold and set the prices and special conditions governing such sales. Valuable items should be added to the prisoner's personal property list after purchase.
 (2) A list of items for sale and prices should be easily accessible to prisoners.
(3) Prices should be set at a profit rate not to exceed 15%.
 (4) Any expenses involved in the commissary operation, including compensation for commissary employees and gratuities for prisoners who may assist such employees, may be paid from the profits.
 (5) Profits in excess of expenses should be used for prisoner welfare, such as recreation, table games, and television.
The above-quoted rule sets forth the procedures to be followed with regard to the operation of a county jail canteen. As an administrative regulation, it is presumptively valid. See State Florida v. Mathews, 526 F.2d 319 (5th Cir. 1976), and Florida Citrus Commission v. Golden Gift, Inc., 91 So.2d 657 (Fla. 1957). Thus, the funds generated from the operation of the canteen should be allocated and disposed of in the manner contemplated by Rule 33-8.10, supra.
From the foregoing, it is evident that the terms of Ch. 219, F. S., and ss. 30.51 and 145.121, F. S., do not govern the disposition of the funds under discussion. These statutory provisions are applicable to such funds as are received or collected or payable to the office of sheriff pursuant to law (for services rendered or performed for other parties or public agencies doing business with the sheriff). Inasmuch as the funds or profits derived from the operation of a canteen are generated for other purposes and under the authority of an administrative rule, and not a statute, the statutory provisions cited do not control these funds or profits.
Your inquiry also raises the question of whether the tangible personal property acquired and utilized by the sheriff in conjunction with his operation of an inmate canteen facility is subject to the provisions of Ch. 274, F. S. It is clear that this question must be answered in the affirmative. Section 274.01(1) defines the term `governmental unit' to include the county commissions or county sheriffs. `Property' is defined by s.274.01(3) to mean `all tangible personal property, owned by a governmental unit, of a nonconsumable nature.' See also s. 274.02, which sets forth inventory and record-keeping requirements for property defined as `fixtures and other tangible personal property of a nonconsumable nature the value of which is $100 or more and the normal expected life of which is 1 year or more.' Thus, any tangible personal property owned by the county or the sheriff and used in the operation of a county jail canteen and which is within the definitional purview of Ch. 274 is subject to the provisions of that chapter.
To summarize, it is my opinion that funds received by a sheriff in connection with his administration of an inmate work-release program are not `public money' as that term is defined in Ch. 219, F. S., and must be handled and disbursed in accordance with the requirements of the work-release law and court orders rendered thereunder. Neither are such funds subject to the provisions of ss. 30.51 and 145.121, F. S. Personal funds of inmates which are `confiscated' and `stored' as authorized by rule of the Department of Corrections, remain the personal property of the inmate and are not `public money' as that term is defined in Ch. 219. Funds generated by the operation of an inmate commissary or canteen facility by the sheriff's office in the county jail are not `public money' as that term is defined in Ch. 219 and should be disbursed according to the terms of Rule 33-8.10, F.A.C. These funds are not subject to the requirements of ss. 30.51 and145.121. Tangible personal property of a nonconsumable nature owned by the county or the sheriff and used in the operation of a county jail canteen is subject to the provisions of Ch. 274, F. S.
Prepared by:
Patricia R. Gleason Assistant Attorney General