Ernest Ellison Auditor General Tallahassee
QUESTION:
May the board of trustees of a community college enter into a lease-purchase agreement with a community college direct-support organization for the lease of buildings and property to be used by the community college to provide housing for its students?
SUMMARY:
The governing board of a community college district does not have the authority under existing statutes to provide housing for its students or to contract with its direct-support organization to provide such housing.
According to your letter, the Auditor General's office, during the course of a postaudit, has become aware that the board of trustees of a community college has entered into an agreement with the community college direct-support organization for the lease of buildings and property to be used by the community college to provide housing for its students. Attached to your letter, you submitted a copy of the lease between the community college and the direct-support organization, in which lease the college agrees to pay to the direct-support organization an annual rental fee in advance, in a single lump sum, as well as to pay the mortgage payments to a financial institution. The college is also responsible for the maintenance of hazard insurance and for all utility charges. You have therefore requested an opinion as to the legality of such an arrangement under existing statutes and rules of the State Board of Education.
Section 230.753(2)(a), F. S., creates for each community college district a board of trustees which `under statutes and other rules and regulations of the state board [of education] has all powers necessary and proper for the governance and operation of the respective community colleges.' The board of trustees is vested with the responsibility to operate the community college with such necessary authority as may be needed for the proper operation thereof in accordance with the regulations of the State Board of Education. Section 230.754(1), F. S.; see also s. 230.754(2), regarding the general powers granted to boards of trustees in order to aid them in carrying out their responsibility for the operation of their respective community colleges. The State Board of Education has been granted the general power to prescribe standards for the state system of public education and minimum standards for community colleges. See ss. 229.053(1) and 230.755, F. S., respectively. Regulations, promulgated by the State Board of Education to implement Ch. 228, et seq., F. S., the Florida School Code, have `the full force and effect of law' if within the scope and intent of the statute. Section 229.041, F. S. Rule 6A-2.42, F.A.C., promulgated by the state board, provides:
 (1) Community colleges are designed to serve a commuting rather than a residential student body. No tax funds shall be spent for the construction of student housing and student housing on community college campuses is not encouraged. In unusual circumstances were students are already housed in the campus of a community college, such student housing shall conform with the minimum requirements of the division of hotels and restaurants, department of business regulation, for public lodging establishments as contained in Rules 7C-2.02, 2.03, 2.04, 2.05, and 3.01, F.A.C.
 (2) Each community college shall include in its written policies a statement with regard to student housing. Such policy shall be consistent with law and rules. (Emphasis supplied.)
This rule, formerly Rule 6A-14.803, F.A.C., was amended in 1978 to include the word `already' in subsection (1). Implicit in your inquiry is a consideration of the validity of Rule 6A-2.42, F.A.C. This office, however, cannot comment or pass upon the legality of the rules of the State Board of Education unless requested to do so by that body; the state board has been granted broad powers throughout the state with regard to community colleges, and such rules, promulgated in the exercise of its rulemaking authority, are presumptively valid. Cf. Florida Citrus Commission,91 So.2d 657 (Fla. 1956); 4245 Corporation, Mother's Lounge, Inc. v. Division of Beverages, 348 So.2d 934 (1 D.C.A. Fla., 1977); and 73 C.J.S. Public Administrative Bodies and Practices s. 104. Thus, this office cannot render a definitive legal opinion to your office with respect to the state board or its rules or regulations.
However, under existing statutes, neither a board of trustees of a community college nor its direct-support organization appears to be authorized to provide student housing. This office has previously stated that a community college district or its governing board of trustees possesses no inherent or common-law powers of its own, but rather derives its authority from those powers which have been expressly conferred by statute or are necessarily implied from an express power or duty. See, e.g., AGO's 078-68, 078-67, 078-56, and 078-12. See also AGO 072-319 in which this office stated that the boards of trustees of community colleges `[a]s administrative authorities have only that authority and those duties prescribed by statute and rules, regulations or standards which may be adopted by the State Board of Education.'Cf. Harvey v. Board of Public Instruction, 133 So. 868 (Fla. 1931), and Buck v. McLean, 115 So.2d 764 (1 D.C.A. Fla., 1959).See also Molwin Investment Co. v. Turner, 167 So. 33 (Fla. 1936) (express power duly conferred may include implied authority to use means necessary to make express power effective but may not warrant the exercise of a substantive power not conferred). The governing board of trustees of a community college may exercise only those powers specifically or by necessary implication authorized or granted by statute; moreover, if there is any doubt as to the lawful existence of a particular power being exercised, the further exercise of the power should be arrested. See State exrel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628,636 (1 D.C.A. Fla., 1974), Cert. dismissed, 300 So.2d 900 (Fla. 1974); Gessner v. Del-Air Corporation, 17 So.2d 522 (Fla. 1944); Harvey *4177 v. Board of Public Instruction, supra; and White v. Crandon, 156 So. 303 (Fla. 1934). Thus, the power of a school authority to contract is generally limited to that which is expressly or impliedly conferred by statute and is subject to such constitutional and statutory restraints which may be imposed. 78 C.J.S. Schools and School Districts ss. 270 and 277; George Babcock, Inc. v. Board of Public Instruction for Dade County,140 So. 644 (Fla. 1932) (county board of public instruction may only assume obligations authorized by statute and only pursuant to method prescribed therein); National Bank of Jacksonville v. Duval County, 34 So. 894 (Fla. 1903). Cf. 20 C.J.S. Counties s. 174 (county may contract only in manner and for purposes provided by statute and is not bound by contract beyond the scope of its powers, or foreign to its purposes, or which is outside the authority of the officers making it).
Section 230.754(2)(d), F. S., provides that the board of trustees of a community college is the contracting agent of the college and may make contracts, sue, and be sued in the name of the board. The rules of the State Board of Education also provide that a board of trustees of a community college may
 . . . [e]nter into contractual agreements with the federal government or any of its departments or designated agencies; other institutions, departments, agencies, district or political subdivisions of the State of Florida and other states of the United States; and private individuals and corporations; provided that such agreements be in the best interests of the college. [Rule 6A-14.247(7), F.A.C.]
While the board of trustees has been given the power to contract, the basis for the exercise of that power must be found elsewhere in the enabling statutes; this power to contract is limited to carrying out those duties or standards imposed by law or which may be validly adopted by the state board. Cf. Phillips v. Santa Fe Community College, 342 So.2d 108, 110 (1 D.C.A. Fla., 1977),appeal dismissed, 345 So.2d 426 (Fla. 1977), in which the court noted that, although the school code places contract authority at the operating level — in the case of each community college, with its district board of trustees — dismissal from a continuing contract of employment was subject to administrative review pursuant to a rule promulgated by the state board; Martin v. Board of Public Instruction, 42 So.2d 714 (Fla. 1949) (statute authorizing city to establish schools and provide for their maintenance does not give city the authority to sell to county board of public instruction land to be used as a school site). Seealso Trustees of Special Tax District, No. 1, Leon County v. Lewis, 57 So. 614 (Fla. 1912) (general authority to supervise school does not include right to lease property), and AGO 073-374.
The board of trustees of a community college does not appear to be authorized by statute to acquire by such a lease-purchase agreement property to be authorized by or student housing or to provide such housing for its students. Section 230.754(2)(g), F. S., which generally authorizes a board of trustees to enter into lease-purchase arrangements, expressly excludes property or buildings to be used as dormitories; `[t]he board of trustees may enter into lease-purchase arrangements with private individuals or corporations for necessary gounds and buildings for community college purposes, other than dormitories, or for buildings otherthan dormitories to be erected for community college purposes . . . .' (Emphasis supplied.) Such lease-purchase arrangements for property and buildings other than for dormitories are to be `paid from capital outlay and debt service funds as provided by s. 230.767(5), [F. S.].' See s. 230.717(1)(c) and (3), F. S., 1977, and s. 9(d), Art. XII, State Const., governing capital outlay and debt service funds. Another fund available to community colleges, the State Community College Program Fund, which is comprised of `all appropriations made by the Legislature for the support of the current operating program,' s. 230.762, F. S., is limited to the operational expenses of the college and does not appear to encompass capital outlays such as for the purchase, lease, or lease-purchase of dormitories; nor am I aware of any other statutory provision which authorizes a board of trustees of a community college to either construct or enter into a lease-purchase agreement to provide student housing. Moreover, s. 230.7566, F. S., which defines for the purposes of the section a community college direct-support organization, provides that such an organization is `[o]rganized and operated exclusively to receive, hold, invest, and administer property and to make expenditures to, or for the benefit of, a community college in Florida.' Section 230.7566(2), authorizes these organizations to use under certain circumstances the property, facilities, and personal services (personnel and payroll processing) of the community college. There is nothing, however, in the statute which authorizes a community college direct-support organization to either construct student housing or enter into a lease-purchase agreement with the community college for the lease of such facilities.
Therefore, I am of the opinion that, until judicially determined to the contrary, a community college does not have the authority under existing to provide housing for its students or to contract with its direct-support organization to provide such housing.
Prepared by:
Joslyn Wilson Assistant Attorney General